## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NIKE IMORU,<br><br>          Plaintiff,<br><br>    v.<br><br>AMERICAN REPERTORY THEATRE<br>COMPANY, INC.,<br><br>          Defendant. | Civil Action No. 1:26-cv-11469<br><br><br>REMOVED FROM THE SUPERIOR<br>COURT OF MIDDLESEX COUNTY,<br>COMMONWEALTH OF<br>MASSACHUSETTS<br>CASE NO. 2681CV00487 |

### NOTICE OF REMOVAL

Pursuant to Title 28 U.S.C. §§ 1331, 1441, and 1446 and Local Rule of Civil Procedure 81.1 of the United States District Court for the District of Massachusetts, Defendant American Repertory Theatre Company, Inc.[1] ("A.R.T." or "Defendant"), hereby files this Notice of Removal with respect to the above-captioned case, *Nike Imoru v. American Repertory Theatre Company, Inc.*, which is currently pending in the Superior Court of Middlesex County, Civil Action No. 2681CV00487.

In support of this Notice of Removal, A.R.T. states:

### PROCEEDINGS IN STATE COURT

1.      On February 19, 2026, Plaintiff Nike Imoru ("Imoru" or "Plaintiff") filed a complaint (hereinafter the "Complaint") in the Superior Court of Massachusetts, Middlesex County, captioned *Nike Imoru v. American Repertory Theater Company, Inc.*, Civil Action No. 2681CV00487 (the "State Court Action").

---

[1] The caption in the underlying Complaint incorrectly lists the name of the Defendant as American Repertory Theater Company, Inc.  The correct legal name of this entity is American Repertory Theatre Company, Inc.

2.      The Complaint was served on A.R.T. on February 27, 2026. A copy of all "process, pleadings, and orders" received by Defendant in the state court action is attached hereto as Exhibit A. *See* 28 U.S.C. § 1446(a).

3.      In the Complaint, Imoru alleges that A.R.T. discriminated against her on the basis of race in violation of M.G.L. c. 151B and the collective bargaining agreement[2] (the "CBA") between Actors' Equity Association ("AEA" or the "Union") and the League of Regional Theaters ("LORT").[3]  Her claim is based on a scalp injury and resulting hair loss she allegedly sustained while she was employed by A.R.T. as an actor in a production of *The Odyssey*. Compl. Intro. Specifically, Imoru contends that A.R.T. treated her disparately based on race when it allegedly made assumptions about her natural hair, about her preferred hairstylist, and about the qualifications of that stylist. Compl. at ¶ 55. She contends she has suffered physical pain, permanent hair loss, financial losses, loss of professional opportunities, and severe emotional distress as a result of the alleged disparate treatment by A.R.T.. *Id.* at ¶ 57.

4.      The terms and conditions of Imoru's employment with A.R.T. were governed by the CBA. Compl. ¶ 9.  The CBA contains provisions governing hair styles, changes, and maintenance, which require written agreement to hair style changes, provision of licenses and qualified technicians to perform hair services, 48 hours' notice of the technician and their qualifications, and a consultation regarding upkeep and maintenance of hair styles.  *Id.* ¶ 10; Ex B, at 16.

---

[2] A copy of the CBA is attached hereto as Exhibit B.
[3] LORT is an association of non-profit regional theaters of which A.R.T. is a member.

2

5. The CBA also contains provisions regarding non-discrimination. Ex. B, at 25 (Rule 24(B)(1)) ("There shall be no discrimination against any Actor or Stage Manager or applicant for a part in a cast by reason of race, color . . .").

6. As a result, Imoru contends that A.R.T. discriminated against her on the basis of race when it violated the hair style provisions of the CBA. Specifically, she contends A.R.T. failed to inform her of the qualifications of the A.R.T. employee who styled her hair and failed to seek or obtain her written consent for the hair style change. Compl. ¶¶ 24-26.

7. Imoru filed a grievance pursuant to the CBA in which she outlined these alleged violations, and noting, "The above violations are even more egregious when compared to the disparate treatment Ms. Imoru received as a Black woman with textured hair when compared to her white colleagues. . . . This disparate treatment was in violation of LORT Rules 24(B)(1) and 24(F)(1)(b)." June 12, 2025 Grievance, attached hereto as Exhibit C.

## TIMELINESS OF REMOVAL

8. This Notice of Removal is timely because it is filed within 30 days of service of the Complaint on A.R.T. on February 28, 2026. 28 U.S.C. § 1446(b)(3); *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999).

## JURISDICTION

9. Pursuant to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

10. Pursuant to 28 U.S.C. § 1331, "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

3

11.     Removal of this case is proper pursuant to 28 U.S.C. § 1331 because it presents a federal question under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In her Complaint, Imoru alleges that A.R.T. discriminated against her by violating its obligations to her under both the CBA and state law. Compl. at ¶ 54 ("A.R.T. violated its nondiscrimination obligations under state law, and its contractual obligations to Ms. Imoru . . ."). Specifically, Imoru claims that A.R.T. did not satisfy certain CBA requirements for actor hairstyle changes, including obtaining written consent for the hairstyle change, providing notice of the name and qualifications of a technician at least 48 hours in advance of the services, and offering a consultation regarding best practices for upkeep and maintenance of the hairstyle. *Id*. at ¶¶ 10, 25, 26.

12.     Although the presence or absence of federal question jurisdiction generally is governed by the "well pleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint, the doctrine of complete preemption exists as an "independent corollary to the well-pleaded complaint rule." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Under this doctrine, "if a federal cause of action completely preempts a state cause of action, any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law," *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 24 (1983), such that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar*, 482 U.S. at 393.

13.     Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, has been held to possess this preemptive force.  *See Franchise Tax Bd.*, 463 U.S. at 23.  Thus, "[i]f the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law . . . is pre-empted." *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S.

4

399, 405-06 (1988).   Substantive federal principles permit removal under federal question jurisdiction where at least one of a plaintiff's claims is preempted by § 301. *Id.* at 406, n.5; *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209 (1985). In the First Circuit, "[i]t is well-established that § 301 completely preempts a state law claim if the resolution of the claim necessitates analysis of, or substantially depends on the meaning of, a collective bargaining agreement." *Quesnel v. Prudential Ins. Co*., 66 F.3d 8, 10 (1st Cir. 1995).

14.     Thus, state law discrimination claims are preempted if their resolution depends on the analysis of the terms of a collective bargaining agreement. *See Fant v. New England Power Serv. Co.*, 239 F.3d 8, 16 (1st Cir. 2001) (finding that plaintiff's state law discrimination claim was preempted by § 301 because "it require[d] interpretation of the CBA"); *Garcia v. United Parcel Serv., Inc.*, No. 24-CV-10762-DJC, 2025 WL 490805, at *6 (D. Mass. Feb. 13, 2025) (concluding that state law discrimination claim was preempted under LMRA when determination of whether actions were discriminatory required evaluation of CBA); *Cameron v. Idearc Media Corp.*, No. CIV.A. 08-12010-LTS, 2011 WL 4054864, at *7 (D. Mass. Sept. 9, 2011), *aff'd*, 685 F.3d 44 (1st Cir. 2012) (holding that state law discrimination claim was preempted where plaintiffs' arguments that certain conduct was discriminatory "[could] be assessed only by reference to the CBA").

15.     Here, Imoru was a member of a bargaining unit whose terms and conditions of employment are governed by the CBA. Ex. B.

16.     The CBA establishes the terms and conditions for actor hair styles.   Specifically, Rule 12 (Clothing and Costumes) sets forth the requirements with respect to hair styles, changes, and maintenance.   It states:

> (2) Change of Hair Style. The Actor may not be required to cut or change the style of Actor's hair in any way, or to shave the Actor's head, or to remove or modify the Actor's body and/or facial hair, unless agreed in writing. The Actor may, however, be required to let Actor's hair grow, or be required to grow a beard, provided the

5

Actor agrees in writing. If agreed, the Theatre shall pay the original expenses and the expenses of the upkeep of said hair or hair style.

(3) If a hair style requires services that may alter or harm the Actor's hair or skin (e.g., chemical permanents, relaxers, weaves, braids, bleaching), the Theatre will identify a licensed and qualified technician to perform those services and give the Actor notice of the name and qualifications of the technician at least 48 hours in advance of any services. The Theatre and Actor, in consultation with the technician, will determine best practices for the upkeep and maintenance of the hair style and/or protection of the hair or skin.

Ex. B, at 16 (Rule 12(G)).

17.    The CBA also includes a grievance and arbitration provision which provides for the resolution of disputes relating to the application or interpretation of terms in the CBA. Ex. B, at 2-4 (Arbitration) ("Before proceeding to arbitration, the dispute must be submitted for review and possible resolution by a Grievance Committee . . .").

18.    Accordingly, Imoru's claim that she was treated disparately based on race cannot be resolved without interpreting the requirements of the CBA with respect to hair styles. Imoru herself alleges that A.R.T. violated the terms of the CBA in a way that disparately impacted her on the basis of race. Because the underlying issues raised by Imoru's Chapter 151B claim require an interpretation of a labor agreement, Imoru's claim is preempted by § 301. As a result, this Court has federal question jurisdiction of this case under 28 U.S.C. § 1331.

19.    Therefore, this case is properly removable to this Court under 28 U.S.C. § 1441.

**VENUE AND NOTICE**

20.    Removal is appropriate "to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).  Pursuant to 28 U.S.C. § 101, this Court embraces the Middlesex Superior Court, Commonwealth of Massachusetts.  Accordingly, this Court is the appropriate venue for removal of this action.  28 U.S.C. § 1441(a).

6

324184187v.2

21.    Prompt written notice of this Notice of Removal has been sent to Imoru through her counsel, and to the Clerk of Court for Middlesex Superior Court, Commonwealth of Massachusetts, as required by 28 U.S.C. § 1446(d).  A copy of this notice is attached hereto as Exhibit D.

**CONCLUSION**

22.    Based on the foregoing, this Court has original jurisdiction over this action because this action arises under federal law under 28 U.S.C. § 1331. Therefore, the Court properly may exercise jurisdiction over this lawsuit. 28 U.S.C. § 1441(a).

23.    A.R.T. submits this Notice of Removal without waiving any defenses to the claims asserted by Imoru, without conceding that Imoru has pleaded claims upon which relief can be granted, and without admitting that Imoru is entitled to any monetary or equitable relief whatsoever (or that the damages she seeks may be properly sought).

24.    Should Imoru seek to remand this case to state court, A.R.T. respectfully asks that it be permitted to brief and argue the issue of this removal prior to any order remanding this case. In the event the Court decides remand is proper, A.R.T. respectfully requests that the Court retain jurisdiction and allow A.R.T. to file a motion asking this Court to certify any remand order for interlocutory review by the First Circuit Court of Appeals, pursuant to 28 U.S.C. § 1292(b).

WHEREFORE, A.R.T. requests that the above-described action pending against it be removed to the United States District Court for the District of Massachusetts. A.R.T. also requests all other relief, at law or in equity, to which it is entitled.

324184187v.2

DATED: March 27, 2026

Respectfully submitted,

By Its Attorneys,

By: */s/ Molly C. Mooney*
Robert A. Fisher (BBO# 643797)
rfisher@seyfarth.com
Molly C. Mooney (BBO# 687812)
mmooney@seyfarth.com
Nicole E. Ricker (BBO# 713593)
nricker@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone:    (617) 946-4800
Facsimile:    (617) 946-4801

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a true copy of the forgoing document was electronically filed through the Court's ECF system. Paper and electronic copies were served on the plaintiff as follows:

Jody L. Newman
jnewman@lovettobrien.com
Justin P. O'Brien
jobrien@lovettobrien.com
Morgan A. Rosh
mrosh@lovettobrien.com
Lovett O'Brien LLP
155 Federal Street, Suite 1300
Boston, MA 02110

*/s/ Molly C. Mooney*
Molly C. Mooney

8