**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

NIKE IMORU,

        Plaintiff,

    v.

AMERICAN REPERTORY THEATRE
COMPANY, INC.,

        Defendant.

Civil Action No. 1:26-cv-11469-GAO

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND REPLY
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

In response to Defendant American Repertory Theatre Company, Inc.'s ("A.R.T.")

motion to dismiss, Plaintiff Nike Imoru ("Imoru") cross-moves to remand this case to state court.

That motion must be rejected because the premise of Imoru's cross-motion is contrary to the

allegations of the Complaint and the law on Section 301 preemption.  According to her

Complaint, Imoru alleges that A.R.T. failed to provide her a licensed and qualified hair

technician as defined by the applicable collective bargaining agreement ("CBA").  *See*

Complaint, ¶10.  She alleges that the CBA required her written consent to any change in hair

style and 48 hours' notice from A.R.T. of the identity and qualifications of the hair technician

provided.  *Id*.  Imoru alleges that A.R.T. violated this provision of the CBA and that the

individual who was provided damaged her hair.  *See* Complaint, ¶¶ 10, 22-25, 54.  She alleges

that by this conduct, A.R.T. violated state discrimination law, and as evidence of disparate

treatment, alleges that she was denied "a qualified stylist."  *Id*. at ¶¶ 54, 55.

In the face of these allegations, Imoru insists that her discrimination claim is somehow

insulated from preemption by Section 301 of the Labor Management Relations Act. However,

rather than some free-standing claim, the plain allegations in the Complaint confirm that Imoru's discrimination claim rests on whether A.R.T. complied with the hairstyling provisions in the applicable CBA. Resolving that issue necessarily requires interpretation of that agreement, which is precisely the circumstance in which state law claims are displaced by federal labor law. Imoru's characterization of her discrimination claim as an independent statutory right ignores the facts of the case she brought.

Not only is this case properly in federal court, the Complaint should be dismissed.  As Imoru's claim is preempted by federal labor law, her recourse is through the grievance and arbitration process of the CBA, a process that she is pursuing.  In addition, the Complaint independently fails on the merits. Imoru does not plausibly allege an adverse employment action or causation between any action taken by A.R.T. and any alleged discriminatory animus. Instead, her allegations describe a workplace injury – one she in fact pursued through the workers' compensation scheme.

In short, Imoru's claim under M.G.L. c. 151B is both preempted and substantively deficient. For the reasons set forth below, A.R.T. respectfully requests that the Court deny Imoru's Motion to Remand and dismiss her Complaint with prejudice.

<u>**ARGUMENT**</u>

I.    **THIS COURT HAS SUBJECT MATTER JURISDICTION OVER IMORU'S CLAIM, WHICH IS PREEMPTED BY FEDERAL LABOR LAW**

Removal of a case is proper when the federal district court would have had original jurisdiction over the case had it been filed in that court. *BIW Deceived v. Loc. S6, Indus. Union of Marine & Shipbuilding Workers of Am., IAMAW Dist. Lodge 4*, 132 F.3d 824, 830 (1st Cir. 1997) (citing *Grubbs v. General Elec. Credit Corp.*, 405 U.S. 699, 702 (1972)). Disputes arising under a collective bargaining agreement are completely preempted under Section 301 of the

LMRA (29 U.S.C. § 185) and therefore can be properly removed to a federal court. The purpose of Section 301 preemption is to establish a uniform national doctrine of labor policy. *See Int'l Bhd. Of Elec. Workers v. Hechler*, 481 U.S. 851, 857 (1987). The preemptive scope of Section 301 includes both suits alleging violations of labor contracts, as well as state law claims that are "substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 220 (1985). "Federal subject-matter jurisdiction exists as long as—at the time of removal—there was a seemingly valid or genuine argument that adjudication of the plaintiff's claim would require construction of the CBA." *Lawless v. Steward Health Care Sys., LLC*, 894 F.3d 9, 18 (1st Cir. 2018). By arguing that her M.G.L. c. 151B claim is an independent statutory right that does not require interpretation of the CBA to resolve, Imoru seeks to evade preemption by federal labor law that mandates the dismissal of her Complaint. Imoru's arguments fail for the reasons stated below.

### A.    Imoru's Claim Does Not Exist Independently of the CBA and Requires Interpretation of That Agreement.

Imoru contends that her claim should escape preemption because it stems from a statutory right that should be adjudicated independently of the CBA. This argument has been squarely rejected by the First Circuit. *See Rose v. RTN Federal Credit Union*, 1 F.4th 56 (1st Cir. 2021) (affirming denial of plaintiff's motion to remand where her eligibility for relief under the Wage Act was dependent on interpretation of CBA provision). "LMRA preemption of a given state-law claim depends upon whether the claim's adjudication appears to be 'inextricably intertwined with consideration of the terms of [a] labor contract.'" *Id*. at 61, citing *Lueck*, 471 U.S. at 213. At its core, Imoru's claim attempts to infer discriminatory animus based on A.R.T.'s alleged failure to follow the actor hairstyling requirements established by the CBA.  Imoru's allegations are inextricably tied to the terms of the CBA, as she is using the CBA language as a

3

benchmark to measure whether she was treated disparately on the basis of race. In fact, Imoru's Complaint explicitly alleges that A.R.T. violated its obligations to her under the CBA and quotes the relevant contract language governing hairstyling requirements. *See* Compl. ¶¶ 10, 55. Specifically, she claims that A.R.T. failed to follow the proper CBA procedures with respect to obtaining her consent for a hairstyle change, identifying a qualified technician, and providing notice of that technician's qualifications. *See generally* Compl. ¶¶ 20-28. The central premise of her discrimination claim is that A.R.T. failed to follow these CBA-mandated procedures and this is somehow evidence of disparate treatment under M.G.L. c. 151B. Resolution of these allegations necessarily requires inquiry into A.R.T.'s contractual obligations under the CBA.

In claiming otherwise, Imoru insists that there is nothing in the CBA that requires interpretation, but she ignores the substance of the Complaint that she filed. The Complaint alleges that A.R.T. deviated from the established procedure as to Imoru's hairstyling, which is evidence of purported discrimination against her. Thus, her claim requires interpretation to determine whether A.R.T. met its obligations under the CBA. The contractual requirements are not as clearcut as Imoru suggests. For example, interpretation is necessary to determine what it means for a technician to be "qualified" to perform hairstyling services within the meaning of the agreement. Further, the Complaint alleges that Imoru was given the choice of working with an outside stylist instead of an A.R.T. employee. Interpretation of the CBA requirements is necessary to determine whether A.R.T. met its obligations to Imoru by offering that option. These questions present live interpretive disputes, bringing Imoru's claim squarely within Section 301.

The cases Imoru cites in her opposition demonstrate that the claim presented here is preempted by federal labor law. In *LaRosa v. United Parcel Service, Inc.*, the court found that even when there was an independent statutory basis for plaintiff's claim, the court still needed to

consider whether resolution of that claim required an interpretation of the relevant CBA to determine whether the claim was preempted. 23 F. Supp. 2d 136 (D. Mass 1998). Therefore, even if Imoru's claim implicated an independent right under M.G.L. c. 151B, which it does not, the Court would still have to interpret the terms of the CBA to determine whether Imoru was treated disparately with respect to A.R.T.'s obligations under that agreement.

*Navarro v. U.S. Tsubaki, Inc.*, also cited in Imoru's opposition, is distinguishable on its facts. 577 F. Supp. 2d 487 (D. Mass. 2008). In that case, the plaintiffs claimed they were denied promotions on the basis of race. Eligibility for promotion was determined by a points-based ranking system established by a CBA. The plaintiffs alleged that they were not promoted despite being the most qualified employees under that system. Rather than a question of interpretation of the CBA, the promotion decisions at issue occurred within the context of outward racial and gender-based harassment that the plaintiffs experienced in the workplace and the defendant employer did not offer a non-discriminatory reason for its failure to promote them. Further, the plaintiffs did not make any allegation that the CBA had been violated. Therefore, the terms of the contact were not determinative. In contrast here, Imoru's discrimination claim is premised on her allegation that A.R.T. explicitly violated the terms of the CBA with respect to her hairstyling but followed those requirements with respect to an actor of a different race. Interpretation of the CBA is thus integral to resolving her claim.

The instant case is clearly comparable to *Garcia*, where the court was required to interpret the CBA's process for assigning delivery routes to drivers to understand whether there was disparate treatment in the application of those requirements on the basis of race. *See Garcia v. United Parcel Serv., Inc.*, No. 24-CV-10762-DJC, 2025 WL 490805 (D. Mass. Feb. 13, 2025). Likewise, the Court must interpret the CBA to determine what A.R.T.'s obligations were with

5

326043435v.3

respect to hairstyling, whether it met those obligations as to Imoru, and whether there was disparate treatment in the application of those requirements. Like in *Cameron*, since Imoru's claim can only be assessed by reference to the CBA, it must be preempted by federal labor law. *See Cameron v. Idearc Media Corp.*, No. CIV.A. 08-12010-LTS, 2011 WL 4054864 (D. Mass. Sept. 9, 2011).

Taken together, this case is properly before this Court pursuant to Section 301 of the LMRA.  Further, Imoru's claim separately fails on the merits.

**B.**          **Imoru Has Not Exhausted The Grievance Process Under The CBA.**

Imoru's Complaint alleges that A.R.T. violated the terms of the CBA with respect to the required procedures for actor hairstyle changes. Her remedy for a violation of the CBA is to file a grievance through the contract's grievance and arbitration process. In fact, Imoru did file a grievance with the same allegations as are in her Complaint, and that grievance is still currently pending. Her simultaneous pursuit of remedies under the contract confirms that her claim arises from the CBA. She cannot spread her risk by both filing a grievance and also relabeling that grievance as a claim under state discrimination laws. Imoru has failed to exhaust the grievance process, which is the proper vehicle for resolving her allegations. Thus, her claim in this action is preempted by Section 301 and must be dismissed.

**II.   IMORU HAS NOT PROPERLY ALLEGED A VIOLATION OF M.G.L. c. 151B**

Finally, the Complaint does not establish a *prima facie* case of race discrimination because Imoru does not allege that A.R.T. took any adverse employment action against her or that A.R.T. took any action motivated by discriminatory animus.

First, Imoru argues that she has sufficiently alleged an adverse employment action because A.R.T. "in the context of its employment of Ms. Imoru in the *Odyssey* production, assigned an unqualified Black backstage crew member to restyle [her] hair based on [her] race."

6

Opp. p. 10. However, Imoru admits in her Complaint that she was given the option of working with an outside stylist, but consented to have the styling done by the A.R.T. employee. Nothing about that could be viewed as an adverse action. Imoru does not and cannot allege that she was terminated, demoted, or transferred by A.R.T. or that she lost out on any pay in connection with her performance in the *Odyssey*.

While Imoru contends that an adverse employment action can extend beyond the scope of a personnel action, none of the cases she cites support the proposition that a physical workplace injury constitutes an adverse action for the purposes of a discrimination claim under M.G.L. c. 151B. *See Yee v. Massachusetts State Police*, 481 Mass. 290 (2019) (discrimination claim under M.G.L. c. 151B concerning employee's lateral transfer); *Newton v. Commonwealth Emp't Rel. Bd.*, 496 Mass. 82 (2025) (retaliation claim under M.G. L. c. 150E regarding employee's transfer from one shift to another); *Psy-Ed Corp. v. Klein*, 459 Mass. 697 (2011) (retaliation claim under M.G. L. c. 151B concerning post-termination lawsuit against former employee). Despite Imoru's attempts at repackaging a workplace injury as a discrimination claim, her allegations fall directly within the workers' compensation statutory scheme. The only case she cites to support her contrary position concerned damages resulting from workplace sexual harassment, not a physical injury. *See College-Town, Div. of Interco, Inc. v. Massachusetts Com'n Against Discrimination*, 400 Mass. 156 (1987).

As to causation, Imoru makes no tangible factual allegations to support her claim that A.R.T. discriminated against heron the basis of race. At bottom, her claim rests on her allegation that A.R.T. failed to comply with the hairstyling terms of the CBA, but that is not evidence of discrimination. While she asserts that an unnamed white female actor was given the option of receiving hairstyling services from either an A.R.T. employee or an outside technician, Imoru

7

alleges that she was given those same choices and opted to work with the A.R.T. employee. Her insistence that A.R.T. failed to follow the CBA is nothing more than an attempt to dress up a contractual violation and workplace injury into a M.G.L. c. 151B claim.

## CONCLUSION

For the foregoing reasons, A.R.T. respectfully requests that Plaintiff's Motion to Remand be denied and that her Complaint be dismissed.


DATED: May 29, 2026

Respectfully submitted,

AMERICAN REPERTORY THEATRE COMPANY, INC.,

By Its Attorneys,


By: */s/ Molly C. Mooney*

Robert A. Fisher (BBO# 643797)
rfisher@seyfarth.com
Molly C. Mooney (BBO# 687812)
mmooney@seyfarth.com
Nicole E. Ricker (BBO# 713593)
nricker@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210-2028
Telephone:    (617) 946-4800
Facsimile:    (617) 946-4801

326043435v.3

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 29, 2026, a true copy of the forgoing document was electronically filed and served through the Court's ECF system on the following parties:

Jody L. Newman
jnewman@lovettobrien.com
Justin P. O'Brien
jobrien@lovettobrien.com
Morgan A. Rosh
mrosh@lovettobrien.com
Lovett O'Brien LLP
155 Federal Street, Suite 1300
Boston, MA 02110

*/s/ Molly C. Mooney*
Molly C. Mooney

326043435v.3